IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| ROBIN A. DABNEY-MARQUARDT, | ) | CASE NO. 1:17 CV 1059 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

**Introduction**

Before me[1] is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Robin A. Dabney-Marquardt, for disability insurance benefits. The Commissioner has answered[2] and filed the transcript of the administrative record.[3] Under my initial[4] and procedural[5] orders, the parties have briefed

---

[1] ECF # 25. The parties have consented to my exercise of jurisdiction.

[2] ECF # 11.

[3] ECF # 12.

[4] ECF # 7.

[5] ECF # 13.

their positions[6] and filed supplemental charts[7] and the fact sheet.[8] They have participated in a telephonic oral argument.[9]

**Facts**

**A.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Dabney-Marquardt, who was 44 years old at the time of the administrative hearing,[10] is a high school graduate with a certificate in nursing.[11] She is married and lives with her husband and mother in law.[12] Her past relevant employment history includes work as a nurse assistant.[13]

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Dabeny-Marquardt had severe impairments consisting of: obesity; diabetes mellitus; peripheral neuropathy; degenerative disc disease of the lumbar spine; chronic kidney disease; obstructive sleep apnea; anemia; absence seizures; and

---

[6] ECF # 18 (Commissioner's brief); ECF # 14 (Dabney-Marquardt's brief).

[7] ECF # 18, Attachment 1 (Commissioner's charts); ECF # 15 at 3 (Dabney-Marquardt's charts).

[8] ECF # 15 at 1 (Dabney-Marquardt's fact sheet).

[9] ECF # 27.

[10] ECF # 15 at 1.

[11] *Id.*

[12] ECF # 12, Transcript ("Tr.") at 31.

[13] *Id.* at 20.

orthostatic hypertension.[14] The ALJ made the following finding regarding Dabney-Marquardt's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must have an option to shift between sitting and standing for five minutes every hour and must use a can[e] when standing or walking. She can occasionally climb stairs and ramps but cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, and crouch but cannot kneel or crawl. She can reach in all directions, handle, finger, and feel.[15]

The ALJ decided that this residual functional capacity precluded Dabney-Marquardt from performing her past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed nationally that Dabney-Marquardt could perform.[17] The ALJ, therefore, found Dabney-Marquardt not under a disability.[18]

---

[14] *Id*. at 82.

[15] *Id.* at 85.

[16] *Id*. at 87.

[17] *Id*.

[18] *Id*. at 88.

**B.     Issues on judicial review**

Dabney-Marquardt asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Dabney-Marquardt presents the following issues for judicial review:

- The ALJ found at Step Four and Five that the plaintiff had the residual functional capacity for sedentary work. This finding is unsupported by substantial evidence because the ALJ failed to afford controlling weight to the evaluation of Dr. Kumar, a treating physician, and failed to provide specific reasons for the weight assigned that evaluation; the ALJ failed to include in the finding limitations cause by plaintiff's balance disorder, absence seizures, and dizziness.

- The ALJ found at Step Four and Five that the plaintiff had the residual functional capacity for sedentary work. This finding is unsupported by substantial evidence because the ALJ failed to consider the effects of plaintiff's obesity under Social Security Ruling 02-1p and the ALJ failed to include plaintiff's absenteeism.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Applicable legal principles**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42

---

[19] ECF # 14 at 1.

> U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.     The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable

---

[23] 20 C.F.R. § 404.1527(c)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003)).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight that should be given to the treating source's opinion.[34]

---

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)). This provision is now found at 20 C.F.R. § 404.1527(c)(2). *See* SOCIAL SECURITY ADMINISTRATION, HOW WE COLLECT AND CONSIDER EVIDENCE OF DISABILITY, 77 Fed. Reg 10651, 10656 (Feb. 23, 2012).

[34] *Wilson*, 378 F.3d at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the regulatory requirement for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather, it reinforces and underscores what that

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. § 404.1527(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d at 242.

[54] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

**B.    Application of standards**

Questioning at the oral argument narrowed this case down to the following issue: whether the RFC should have included a limitation for Dabney-Marquardt's inability to maintain regular attendance.

During the hearing, the ALJ posed the following hypothetical to the VE:

> Q    The hypothetical person is going to have difficulty maintaining regular attendance. They have to leave early, they're coming in late. They're just going to be absent, so at least three times per month this person would miss work. Would that have an impact on any of the jobs that you've mentioned?[59]

The VE responded that these limitations would preclude employment.[60]

---

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] Tr. at 60.

[60] *Id.*

Dabney-Marquardt attributes the limitations in the above-cited hypothetical to severe impairments the ALJ found at Step Two – balance disorder, absence seizures, and dizziness.[61] Her peripheral neuropathy and orthostatic hypotension manifest as problems with balance and dizziness.[62] The opinion of Dr. Kumar, upon which Dabney-Marquardt heavily relies, posits unscheduled breaks (frequency and length "hard to determine") but does not answer the question about Dabney-Marquardt's capability to work an eight-hour day, five days a week.[63]

Dr. Kumar did not begin treating Dabney-Marquardt until five months after the date last insured.[64] Although the Commissioner argued before the Court that a treating source who began treating a claimant after the relevant period cannot qualify as a "treating source" for purposes of the regulations, the Commissioner did not make that argument in the brief.[65] Rather, the Commissioner argued that the lack of a relation within the relevant time period was one factor to be considered if the ALJ fails to give the opinion controlling weight.[66] Dr.

---

[61] ECF # 14 at 1.

[62] *See id.* at 5-10.

[63] Tr. at 475-76.

[64] *Id.* at 477. The date last insured is June 30, 2014. ECF # 15 at 1.

[65] *See* ECF # 18 at 12-13.

[66] *Id.*

Kumar's opinion purports to cover the period back to 2010.[67] The more relevant inquiry is the extent to which the opinion can relate back and how far.

The parties' charting on Dr. Kumar's treatment notes is sparse. Dabney-Marquardt charted his opinion[68] and two office visits in November 2014.[69] The Commissioner charted only Dr. Kumar's RFC opinion.[70] That opinion does recite that Dabney-Marquardt had the limitations opined since March of 2010.[71] Within the four corners of the opinion, there is nothing to support such relation back.[72] The ALJ specifically mentioned this lack of support as one of the reasons she discounted Dr. Kumar's opinion.

Although Dabney-Marquardt argues that Dr. Kumar's performed a records review of her "longitudinal treatment history" at the Cleveland Clinic,[73] she cites no medical evidence to the Court predating the date last insured to show Dr. Kumar performed such a review.[74] Rather, her argument amounts to an assertion that the "clear majority" of her treatment was at the Cleveland Clinic system and the Cleveland Clinic records before the date last insured

---

[67] Tr. at 477. The alleged onset date was December 31, 2010. ECF # 15 at 1.

[68] Tr. at 475-76.

[69] *Id.* at 766-82.

[70] *Id.* at 475-77.

[71] *Id.* at 477.

[72] *Id.* at 475-77.

[73] ECF # 14 at 15.

[74] *Id.* at 13-15.

should be medical evidence that Dr. Kumar could rely on in forming his opinion.[75] Although this may be theoretically correct, that argument alone cannot support Dabney-Marquardt's position in the absence of evidence that Dr. Kumar actually reviewed those records.

Dabney-Marquardt bears the burden at Step Four. It is not the Court's charge to comb Dr. Kumar's treatment notes for evidence of a record review, nor to comb the medical records from 2010 through the date last insured for evidence supporting such limitations. A *de novo* review of such magnitude goes well beyond the reasonable scope of judicial review. Here, the ALJ discussed Dr. Kumar's opinion and explained the weight she gave it and why. Dabney-Marquardt fails to identify any evidence the ALJ ignored or overlooked. Therefore, the Court must affirm.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Dabney-Marqaurdt had no disability. Accordingly, the decision of the Commissioner denying Dabney-Marquardt disability insurance benefits is affirmed.

Dated: July 31, 2018                              s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[75] *Id.*